Kenneth BAKER, Arthur Bartniczak, Hanson Bratton, Patrick Jordan, Frank Krezsowik, Elbert McVay and Roger Scally, Plaintiffs,

and

Hanson Bratton, Gale Bogenn, William Shell, Patrick Jordan, Charles Mahoney, Individually and on behalf of all others similarly situated, and the Detroit Police Lieutenants and Sergeants Association, Plaintiffs,

v.

CITY OF DETROIT, a Michigan Municipal Corporation, Detroit Board of Police Commissioners, Coleman Young, Mayor, City of Detroit, Philip G. Tannian, Chief of Police, City of Detroit, jointly and severally, Defendants,

and

Guardians of Michigan, David L. Simmons, Arnold D. Payne, James E. Crawford, Clinton L. Donaldson, Willie Johnson, Kenneth M. Johnson and Alfred Brooks, Intervening Defendants.

Civ. Nos. 5–71937, 5–72264.

United States District Court,
E. D. Michigan, S. D.

July 31, 1978.

See also, 458 F.Supp. 374.

James P. Hoffa, Detroit, Mich., for Kenneth Baker, Arthur Bartniczak, Hanson Bratton, Patrick Jordan, Frank Krzesowik, Elbert McVay and Robert Scally.

Bernard Friedman, Marc G. Whitefield, Preston Oade, Jr., Southfield, Mich., H. Barry Woodrow, Detroit, Mich., for Hanson Bratton, Gale Bogenn, William Shell, Patrick Jordan, Charles Mahoney and Detroit Police Lieut. & Sergeants Association.

Roger Craig, Corp. Counsel, James R. Andary, Sp. Asst. Corp. Counsel, Detroit, Mich., O. Peter Sherwood, New York City, Lowell Johnston, San Francisco, Cal., for City of Detroit, Detroit Board of Police Commissioners, Coleman Young and Philip G. Tannian.

Warren J. Bennia, Washington, D. C., John R. Runyan, Jr., Detroit, Mich., for intervening defendants-guardians of Michigan et al.

## MEMORANDUM OPINION AND ORDER

DAMON J. KEITH, Circuit Judge, sitting by designation.

These two consolidated cases were brought by white officers of the Detroit police department. They challenge the legality of Detroit's affirmative action promotion program [1] by which equal numbers

1. This program was adopted pursuant to the following resolution by the City's Board of Police Commissioners:

### RESOLUTION
### AFFIRMATIVE ACTION STATEMENT

It has been determined that the Detroit Police Department has submitted facts and statistics that would indicate that de facto discrimination exists in the hiring of Blacks and other minority groups as police officers contrary to the U.S. and Michigan Constitutions, the Charter of the City of Detroit, and the Civil Rights Acts.

It has also determined from those facts that de facto discrimination exists in the promoting of Blacks and other minority groups to supervisory positions in the Detroit Police Department contrary to U.S. and Michigan Constitutions, the Charter of the City of Detroit, and the Civil Rights Acts.

It is necessary because of past and present discrimination in the hiring and promotional policies of the Detroit Police Department that this Board establish an Affirmative Action policy that will guarantee to every individual who is now a police officer or who intends to pursue a career as a police officer, a policy of equality in hiring and in promotion and most importantly, an Affirmative Action Program of enforcement to support that policy.

The U.S. Constitution, the Michigan Constitution, the Charter of the City of Detroit, the Civil Rights Acts, and the overwhelming moral principle of equality compels this Board to take Affirmative Action to guarantee to all persons equality in their promotional and hiring rights.

THEREFORE, BE IT RESOLVED, that the Chief of Police is instructed to take immediate Affirmative Action to eliminate any discriminatory hiring practices that systematically exclude minority groups from being appointed as Detroit Police Officers, and

BE IT FURTHER RESOLVED, that the Chief of Police take Affirmative Action to promote minorities from the existing promotional lists, and

BE IT FURTHER RESOLVED, that the Chief of Police establish criteria, with weighted component parts, used to establish promotional lists that are nondiscriminatory with respect to minority groups and

of white and black police sergeants were promoted to the rank of lieutenant. Plaintiffs allege that they were better qualified than the minority officers promoted, and that the affirmative action program thus discriminated against them solely because they were white. Plaintiffs' cause of action is based on alleged violations of 42 U.S.C. §§ 2000e, 2000d, 1981, 1983, 1985 and the Fourteenth Amendment to the United States Constitution. In addition, violations of state law are alleged. Plaintiffs seek actual damages, exemplary damages, back pay and injunctive relief.

Plaintiffs have demanded that a jury try all factual issues.[2] Defendants deny that a right to trial by jury exists in this case. The issue has been fully briefed and the matter was referred to United States Magistrate Paul Komives who held lengthy hearings on the matter.

■ The Seventh Amendment guarantees the right to a jury trial in all actions at common law where the amount in controversy exceeds twenty dollars. *See Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974); *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). There is no requirement that a jury try equitable issues, but where a case involves both legal and equitable claims, the right to trial by jury must be preserved. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

Determining whether a claim is legal or equitable is not always easy. Even a money damages claim may not always be deemed "legal" relief. *See Curtis v. Loether, supra,* 415 U.S. at 196, 94 S.Ct. 1005. In actions brought for back pay and injunctive relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* the courts of appeals have uniformly held that no right to trial by jury attaches. *See, e. g. Slack v. Havens,* 522 F.2d 1091, 1094 (9th Cir. 1975); *EEOC v. Detroit Edison Co.,* 515 F.2d 301, 308 (6th Cir. 1975), *vacated and remanded on other grounds,* 431 U.S. 951, 97 S.Ct. 2669, 53 L.Ed.2d 267 (1977); *Robinson v. Lorillard Corp.,* 444 F.2d 791, 802 (4th Cir.), *cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); *King v. Laborers Int. Union,* 443 F.2d 273, 279 (6th Cir. 1971) (dicta); *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir. 1969).

It is the discretionary aspect of the back pay award, coupled with its restitutionary nature, designed to "make whole" the victims of employment discrimination, which distinguishes a claim for back pay from an ordinary legal damages claim. *See Lorillard v. Pons,* 434 U.S. 575, 582, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 441–444, 95 S.Ct. 2362, 45 L.Ed.2d 280 (Rehnquist, J., concurring); *Slack v. Havens, supra* at 1094; *EEOC v. Detroit Edison Co., supra* at 308; *Johnson v. Georgia Highway Express, Inc., supra* at 1125.

Pointing to *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) and *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), plaintiffs state that it is "unsettled" whether one has the right to a jury trial under Title VII. They further urge that even if a jury trial is ordinarily unavailable, it should be provided in the instant case because trial on the issues of liability and damages has been bifurcated. Finally, they argue that even if a jury trial is unavailable under Title VII, it should be available to them under the damage claims based upon 42 U.S.C. §§ 1981, 1983, 1985 and various pendent state claims.

BE IT FURTHER RESOLVED, that the Chief of Police shall regularly report to the Board of Commissioners on the effectiveness of this Affirmative Action policy in order that this Board may re-evaluate and, if necessary, order additional action that may have to be taken.

ADOPTED JULY 31, 1974

BOARD OF POLICE COMMISSIONERS
City of Detroit

2.  A question exists as to whether a timely jury trial demand was filed by the *Bratton* plaintiffs. There is no need to decide this issue. The Court will assume that all parties filed a timely demand for a jury trial.

■ It is true that the Supreme Court in *Lorillard* and *Curtis* reserved the issue of whether the Seventh Amendment mandates a jury trial for any or all money damages awards under Title VII. However, as indicated above, the Courts of Appeals have spoken with one voice on the question. This Court is unwilling to disregard this clear and well-reasoned mandate.

■ Plaintiffs' argument that bifurcating the trial entitles them to a jury trial has no merit. Actions seeking injunctive relief only are commonly divided into a trial on the merits and then a separate hearing on the injunctive remedy, yet, clearly, no jury trial rights attach there. Plaintiffs in no way indicate why bifurcation makes any difference here.

Plaintiffs' third argument has facial appeal. At first glance, it appears that legal issues, triable to a jury, exist here since plaintiffs seek actual and punitive damages[3] in addition to back pay and injunctive relief. *See Curtis v. Loether, supra* at 195–196, 94 S.Ct. 1005. Plaintiffs particularly point to 42 U.S.C. § 1983, claiming that actual and punitive damages claims are allowable and must be tried to a jury. There is direct support for their argument in this Circuit. *Amburgey v. Cassady*, 507 F.2d 728 (6th Cir. 1974). *See also Burt v. Board of Trustees of Edgefield City School District*, 521 F.2d 1201 (4th Cir. 1975).

At the same time this Circuit has held that a § 1983 action seeking reinstatement and back pay is equitable and no jury trial rights attach. *McFerren v. County Board of Ed. of Fayette Co., Tenn.*, 455 F.2d 199 (6th Cir. 1972), *Accord Smith v. Hampton Training School for Nurses*, 360 F.2d 577, 581 n.8 (4th Cir. 1966) (en banc).

■ The question remains whether adding actual and punitive damages claims to the complaint (as the Plaintiffs have done here) converts an equitable employment discrimination action to a legal one, requiring a jury trial. The Fifth Circuit has said no. A plaintiff cannot, by framing his complaint under § 1981 "*or by making unsupported allegations for compensatory and punitive damages*—unilaterally alter the [equitable] genre of the proceeding." (emphasis added) *Lynch v. Pan American World Airways, Inc.*, 475 F.2d 764 (5th Cir. 1973).

This Court agrees with the Fifth Circuit. Congress' determination that no jury trial be afforded in Title VII cases[4] cannot be evaded by appending additional claims under §§ 1981 or 1983 or other related statutes.

This is especially true in a situation, such as here, where an express employment discrimination claim has been made by plaintiffs under Title VII and joined with claims under §§ 1981, 1983 and 1985. "In fashioning a substantive body of law under § 1981 the courts should, in an effort to avoid undesirable substantive law conflicts, look to the principles of law created under Title VII for direction." *Patterson v. American Tobacco Co.*, 535 F.2d 257, 270 (4th Cir. 1976) *quoting Waters v. Wisconsin Steel Works of Int'l Harvester Co.*, 502 F.2d 1309, 1316 (7th Cir. 1974). *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Detroit Edison, supra* at 309. These salutory principles are directly applicable to the case at bar. Nor is there any reason to

---

**3.** The *Hanson* plaintiffs seek "all actual and exemplary damages, including but not limited to loss of wages, benefits, time and efforts expended in preparing for examinations, mental anguish, loss of standing in the community by reason of denial of promotions, and such other damages as Plaintiffs may show that they have suffered up to the date of trial." Pl. First Amended Complaint ¶ 5.

The *Baker* plaintiffs allege that because they were denied promotion, they suffered "unmeasured mental anguish, including the mental anguish of their families," and that they spent "unmeasured sums" in striving for promotion. Punitive damages are requested because it was "well known" to defendants that they were violating the law. Pl. Complaint §§ 23, 24, 25.

**4.** *See Lorillard v. Pons*, 434 U.S. 575, 582, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). A proposed amendment to Title VII of the Civil Rights Act of 1964 would have provided a jury trial on request. The Senate rejected this proposal. *See* 118 Cong.Rec. 5–2277, 2278 (Daily Ed., Feb. 22, 1972).

distinguish claims under § 1983. The only reason § 1983 is applicable here is because defendants act on behalf of the state.[5] An outcome mandating jury trials in employment discrimination cases against state defendants under § 1983, but not private or state defendants under § 1981 or Title VII, would be irrational. Title VII should provide the guidance here, not plaintiff's ingenuity in adding additional causes of action.[6]

■ The facts of this case present additional, compelling grounds for denying a jury trial. The gravamen of this action is injunctive relief and back pay for alleged employment discrimination. Making bald assertions of malice, plaintiffs ask for additional relief in the form of actual damages for mental anguish and for punitive damages. Yet it is clear that in a § 1983 action for money damages, public officials have qualified immunity if they acted in good faith. *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (prison officials); *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (state hospital superintendent); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (school board members). The standard applied to test good faith is two pronged: 1) Whether the constitutional right allegedly infringed was clearly established and defendants knew or should have known that their conduct violated the right, or, 2) whether the public official acted with malicious intention to deprive the plaintiff of a constitutional right or to cause him other injury. *See Procunier v. Navarette, supra*, 434 U.S. at 560–564, 98 S.Ct. 855. Since the good faith immunity test is based on broad policy considerations, *see Wood v. Strickland, supra* 420 U.S. at 318–322, 95 S.Ct. 992, it should also apply to causes of action for money damages other than § 1983. *Cf. Procunier v. Navarette, supra* 434 U.S. at 556, 98 S.Ct. 855 (alleged violations of § 1985 and § 1983).

Although defendants have inexplicably failed to raise this issue in a motion for summary judgment, the Court notes the total lack of evidence in the record showing anything other than good faith on the part of the city officials under the two-pronged standard outlined above. Plaintiffs' case has yet to be tried on the merits. Nevertheless, the affidavits and depositions filed in this matter reveal that city officials acted out of genuine concern to more fully integrate the police department, in accord with what they thought the law required. There is not a shred of evidence that defendants sought to cause plaintiffs " 'intentional injury', contemplating that the actor intends the consequences of his conduct", *Procunier v. Navarette, supra* 43 U.S. at 566, 98 S.Ct. at 862. Nor can the city officials be said to have infringed a "clearly established" constitutional right, the existence of the right plaintiffs allege is the crux of this litigation!

■ Despite its inclination to do so,[7] this court has no authority to grant even partial summary judgment *sua sponte* ; the parties must be accorded notice and the right to be heard. *Kistner v. Califano*, 579 F.2d 1004 (6th Cir. 1978); *Bowidge v. Lehman*, 252 F.2d 366 (6th Cir. 1958). Although the Court feels that a later grant of summary judgment on this issue would effectively

---

5. Section 1983 provides:

    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

6. *Amburgey v. Cassady*, 507 F.2d 728, 730 (6th Cir. 1974) (dicta) is not to the contrary. *Amburgery* involved a First Amendment complaint, not one for employment discrimination; nor was the § 1983 claim there joined with a Title VII complaint.

7. The Supreme Court has recently spoken strongly of the usefulness of summary judgment on grounds of immunity when public officials are sued for money damages. *Butz v.*

moot the jury demand,[8] it need not delay its decision.

■ Great care must be taken in examining the complaint and the nature of the remedy sought so that a complaint which seeks essentially equitable relief is not subverted by the addition of damage claims to obtain a jury trial where none is justified under the law. Like the Fifth Circuit in *Lynch v. Pan American World Airways, supra,* the Court does not think that unsupported allegations should be allowed to obscure the fundamentally equitable nature of the claim which plaintiffs have brought.

It is, therefore, ORDERED that plaintiffs' demand for a jury be DENIED. It is further ORDERED that Plaintiff's motion for certification of this issue under 28 U.S.C. 1292(b) be denied. The parties are requested to brief and give their views on the proposed grant of summary judgment as to plaintiff's claims for money damages other than back pay.

*Economou,* —— U.S. ——, ——, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

**8.** Granting summary judgment on the damages counts would only leave the equitable issues of back pay and injunctive relief to be tried. *But see Rogers v. Loether,* 467 F.2d 1110, 1118–19

(7th Cir. 1972), *aff'd on other grounds sub nom. Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (jury demand should be decided on the allegations and relief sought in the complaint).